Elisabeth KIRSCH, Appellant,

v.

PICKER INTERNATIONAL,
INC., Appellee.

No. 83–2550.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1984.

Decided Jan. 29, 1985.

Rehearing En Banc Denied
April 3, 1985.

Suzanne Petren, John E. McKay, Kansas City, Mo., for appellant.

James W. Benjamin, Kansas City, Mo., for appellee.

Before HEANEY and JOHN R. GIBSON, Circuit Judges, and HANSON,[*] District Judge.

JOHN R. GIBSON, Circuit Judge.

Elisabeth Kirsch brought this action against Picker International, Inc., claiming that x-ray treatments administered with Picker machines caused her to develop skin cancer. The district court[1] directed a verdict in Picker's favor at the close of the plaintiff's case. Kirsch appeals and urges that two issues should have been submitted to the jury: whether Picker failed to warn the attending physician of the cancer risks associated with x-ray therapy; and whether Picker failed to give a similar warning to Kirsch. We affirm.

At the age of twelve, Kirsch developed a mild case of acne, and her mother took her to Dr. Robert Murphy, a dermatologist. Over the following two years, she received x-ray treatments some sixteen or twenty times, according to different witnesses. This therapy was administered with two machines manufactured by Picker. In 1976, Kirsch noticed a problem with her eyebrows. In March, 1979, a lesion on her cheek caused her to see a doctor and she was diagnosed as having skin cancer. She alleges that the cancer was caused by the Picker machines.

Dr. Murphy stated that he had warned Kirsch's mother of the possibility of skin cancer, but this was vigorously denied by Kirsch and her father. Both denied receiving warnings from any source. There was

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

testimony from several witnesses that Dr. Murphy would have known of the possibility of skin cancer developing after x-ray treatment, as this risk was well known in the medical profession. We will discuss further details in the evidence as they become pertinent to the issues.

The district court directed a verdict at the close of plaintiff's evidence and commented from the bench that there was a lack of evidence of failure to warn, a lack of evidence that the failure caused injury to Kirsch, and evidence of general knowledge in the medical community that x-ray radiation caused cancer. Further, the court relied on evidence that x-ray machines were produced for use only by doctors and competent operators.

On appeal Kirsch argues that there was a question of fact as to whether Picker, as manufacturer of the x-ray, adequately warned Dr. Murphy and Elisabeth Kirsch. The parties agree that these issues must be decided under Missouri law.

### I.

■ We first deal with the duty that Picker owed to the plaintiff. Kirsch argues that Picker should have furnished a patient product information sheet warning her of the dangers of x-ray therapy. Missouri courts have held that in cases involving prescription drugs, the manufacturer has "a duty to properly warn the doctor of the danger involved." *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 146 (Mo.1967) (citations omitted). The physician acts as a "learned intermediary" between the manufacturer and the patient. *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 85 (8th Cir. 1966). Thus, a warning to the doctor is deemed a warning to the patient; the manufacturer need not communicate directly with all ultimate users of prescription drugs. *See Johnston v. Upjohn Co.*, 442 S.W.2d 93, 95 (Mo.Ct.App.1969).

Prescription drugs and x-ray machines are marketed in similar fashion. As the plaintiff's expert testified, radiation therapy equipment is not sold directly to the general public but is available only to qualified professionals. Missouri law is clear with respect to prescription drugs, and these principles apply to x-ray equipment that can be utilized only at the direction of a physician. *See Terhune v. A.H. Robins Co.*, 90 Wash.2d 9, 12–17, 577 P.2d 975, 977–79 (1978) (en banc). Thus, the manufacturer has a duty to properly warn only the doctor of the dangers associated with radiation therapy. The plaintiff was, therefore, not entitled to have a jury consider whether Picker was liable for failing to warn her directly of the cancer risks in radiation therapy.

### II.

■ The second issue is whether Kirsch made a submissible case on Picker's failure to warn Dr. Murphy. We have had frequent occasion to discuss the standard for reviewing directed verdicts. *See Crues v. KFC Corp.*, 729 F.2d 1145, 1148 (8th Cir. 1984). The standard is the same under federal and Missouri law. *Hladyshewski v. Robinson*, 557 F.2d 1251, 1252 (8th Cir. 1977). "[A] directed verdict should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Dace v. ACF Industries*, 722 F.2d 374, 375 (8th Cir.1983) (quoting *Decker-Ruhl Ford Sales v. Ford Motor Credit Co.*, 523 F.2d 833, 836 (8th Cir. 1975)), *rehearing denied*, 728 F.2d 976 (8th Cir.1984) (per curiam).

Under this standard, we cannot conclude that the district court erred. The plaintiff has the burden of showing that the absence of a warning caused the injury. *See* Missouri Approved Instruction No. 25.05 (3d ed.1981). Picker's failure to warn Dr. Murphy could not have been the proximate cause of Kirsch's injury if Murphy was already aware of the cancer risks associated with radiation therapy. *See Strong v. E.I. DuPont de Nemours Co.*, 667 F.2d 682, 687 (8th Cir.1981); Restatement (Second) of Torts § 388 comment k (1965); *id.* § 402A comment j. Thus, the issue narrows to whether there was evidence from which the jury could have found that Dr.

Murphy did *not* know of the cancer dangers posed by the Picker machines.

The record contains no direct proof that Dr. Murphy did not know of the risks in treating acne with x-rays. Jack Kirsch, the plaintiff's father, testified that: neither Dr. Murphy nor a Picker representative warned him of the cancer risks; the Kirsch's had a practice of discussing family medical matters; and Mrs. Kirsch did not mention to Mr. Kirsch any warnings from Dr. Murphy concerning cancer risks. Similarly, Kirsch denied receiving any warnings. She also testified that her mother had not told her of any warnings from Dr. Murphy. Viewed in a light most favorable to the plaintiff, this evidence shows only that neither Dr. Murphy nor Picker warned Kirsch or her parents. This showing is not the same as proving that Dr. Murphy did not know of the risk.

The record does, however, contain considerable evidence that Dr. Murphy knew of the cancer risks:

(1) Dr. Murphy's answers to interrogatories revealed that he warned Mrs. Kirsch: "The explanation as to the possibility of the development of skin cancer was included in general discussions with Elisabeth Kirsch's mother in relation to the affects [sic] of treatment and it was explained that the development of skin cancer was a possibility." (R. 25).

(2) Plaintiff's expert, Dr. Chandler, testified that he believed dermatologists using radiation therapy in 1962 and 1963, including Dr. Murphy, were aware of the risks of skin cancer. Dr. Chandler was not personally acquainted with Dr. Murphy. Chandler also testified that the cancer risks associated with radiation have been known since the turn of the century.

(3) Plaintiff's expert, Dr. Hall, testified that the cancer risks attendant to radiation therapy were generally known by the medical profession in 1962 and 1963.

(4) Plaintiff's expert, Roy Ackerman, testified to his belief that Dr. Murphy would have known of the skin cancer risks.

When viewed in a light most favorable to plaintiff, there simply is no evidence that Dr. Murphy did not know of the danger in using radiation therapy. On the contrary, the only evidence is that he had such knowledge. Any failure to warn by Picker could not have been the proximate cause of Kirsch's injuries. For this reason, the district court did not err in directing a verdict.[2]

We affirm the judgment of the district court.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The district court clearly erred in granting Picker's motion for a directed verdict. We should not compound that error by affirming that court. There was evidence from which the jury could have found that Picker failed to give an adequate warning to Dr. Murphy of the dangers involved in using the Picker x-ray equipment to treat the plaintiff's acne. There is, moreover, evidence from which the jury could have found that Dr. Murphy was not fully aware of these dangers and that the failure to warn was the proximate cause of Elisabeth Kirsch's injuries.

The majority correctly states that, under Missouri law, the plaintiff was not entitled to have the jury consider whether Picker was liable to her for failing to warn her directly of the serious risk of incurring skin cancer from the radiation treatment. But Picker did have a duty to provide Dr. Murphy with an *adequate* warning of the serious risks involved in using the x-ray equipment to treat skin disease. *Sterling Drug, Inc. v. Yarrow*, 408 F.2d 978, 993 (8th Cir.1969); *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 85 (8th Cir.1966); *Racer v. Utterman*, 629 S.W.2d 387, 393 (Mo.Ct. App.1981), *appeal dismissed, cert. denied sub nom. Racer v. Johnson and Johnson*, 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982); *Johnston v. Upjohn Co.*, 442

---

**2.** Kirsch also argues Picker's warnings to Dr. Murphy were diluted by over-promotion. This

argument has no support in the record and fails on proximate cause grounds as well.

S.W.2d 93, 95 (Mo.Ct.App.1969); *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143, 146–47 (Mo.1967). To be adequate, a warning must disclose the nature and extent of the danger, and it must disclose all side effects of which the manufacturer knew or should have known. The manufacturer is held to the skill of an expert and is bound to keep reasonably abreast of scientific knowledge and discoveries in the field in which the equipment is to be used and is deemed to possess whatever knowledge is thereby imparted. *Bine v. Sterling Drug, Inc.,* 422 S.W.2d 623, 628–29 (Mo.1968); *Krug v. Sterling Drug, Inc.,* 416 S.W.2d. 143, 152 (Mo.1967); *Braun v. Roux Distributing Co.,* 312 S.W.2d 758, 763 (Mo.1958). The manufacturer is obligated to pass this newly acquired information on to the learned intermediators promptly and fully. *Schenebeck v. Sterling Drug, Inc.,* 423 F.2d 919, 922 (8th Cir.1970); *Stahlheber v. American Cyanamid Co.,* 451 S.W.2d 48, 58 (Mo.1970).

There was more than sufficient evidence to go to the jury on the question of whether Picker gave Dr. Murphy an adequate warning. The only warning was that contained on the x-ray machines, and it simply stated:

> This x-ray equipment is dangerous to both patient and operator unless established safe exposure factors are observed. Sold to be used only by or on the prescription of physicians.

Operating instructions accompanied the equipment. They showed pictures of the equipment being used on the face of a patient. They did not contain warnings with respect to the use of the equipment. An expert witness testified that the operating instructions implied that the equipment was safe to use in the manner pictured when in fact medical schools were teaching in 1961 and 1962 that the dangers of incurring cancer from x-ray radiation were so great that the technique should not be used to treat skin diseases such as acne. Others

testified that a majority of dermatologists were no longer using x-rays to treat the diseases. Picker was charged with this knowledge and should have transmitted it fully to doctors who had purchased the equipment.

The majority does not assert that the warnings were adequate as a matter of law. It rather holds that Picker's failure to warn Dr. Murphy cannot be the proximate cause of the plaintiff's injury because Dr. Murphy was generally aware of risks from cancer associated with the radiation treatments at the time he administered them. Assuming for the moment that this is a correct statement of the Missouri law, it cannot serve as the basis for a directed verdict in this case because here, there was a conflict in the evidence as to whether the doctor was in fact aware of the risks:

(1) Dr. Murphy did testify by way of deposition that he told the plaintiff's mother, deceased at the time of trial, that there was a risk of cancer from the x-ray treatments. But the jury could have disbelieved that testimony. The plaintiff testified that Dr. Murphy never discussed the danger with her, the plaintiff's father testified that Dr. Murphy never discussed the matter with him, and the father and daughter testified that they frequently discussed the medical treatment with the mother and that she never told either of them of her alleged conversation with Dr. Murphy. The daughter also testified that, on one occasion, the mother in her presence asked the nurse in Dr. Murphy's office whether there was any possibility that the treatment could be harmful, and the nurse replied, "There is nothing used in the office that could possibly hurt the children that come here."

(2) The appellant's three expert witnesses did testify that the "risks" attendant to radiation therapy were known to the medical profession in 1962 and 1963, and that Dr. Murphy *should*[1] have known of the risks. Not one of the three knew Dr. Mur-

---

**1.** The witness used the words "would have known," but when read in context, the jury could well have found that they were simply saying that he should have been fully aware of the risks.

phy and not one testified that Dr. Murphy in fact had knowledge of the serious risks involved in the treatment—risks so serious that Dr. Chandler testified that in the early 1960's, medical schools were telling their students that it was too dangerous to use x-ray therapy to treat skin diseases such as acne. Dr. Murphy graduated from medical school in 1939, and thereafter took one year of postgraduate work in dermatology. He was not Board Certified. There was no evidence that he attended workshops, read current literature on the subject matter, or otherwise kept himself current on the state of the medical art with respect to the use of the x-ray machines to treat skin disease. The record simply showed that he had the machines and he used them frequently.

In light of the above testimony, the jury could have concluded either that Dr. Murphy was not aware of the risks at all, or that he may have been generally aware that there was some risk of cancer if the equipment was not used prudently, but that he was not fully aware of the risks of using the equipment as he did. In either event, the jury could have found for the plaintiff.

Under Missouri law, a manufacturer can escape liability only if he gives an *adequate* warning to the physician of adverse side effects, or if the evidence shows that the physician was fully aware of the side effects and, nonetheless, administered the treatment. It cannot escape liability on the theory that the doctor should have known of these effects but did not. *Sterling Drug, Inc. v. Cornish*, 370 F.2d at 85; *Bine v. Sterling Drug, Inc.*, 422 S.W.2d at 626–27; *Krug v. Sterling Drug, Inc.*, 416 S.W.2d at 146–48. *See also Dalke v. Upjohn Co.*, 555 F.2d 245, 249 (9th Cir.1977); *Lindsay v. Ortho Pharmaceutical Corp.*,

637 F.2d 87, 92 (2d Cir.1980). In *Krug,* the Missouri Supreme Court stated:

In *Sterling Drug, Inc. v. Cornish*, Sterling claimed that appellee's doctors negligently failed to keep up with the literature and that the trial court erred in not instructing the jury on "intervening proximate cause." But there and applicable here, as in *Yarrow v. Sterling Drug*, [263 F.Supp. 159 (D.C.S.D.1967)], supra, the court said, 370 F.2d l.c. 85, "There is no question of intervening proximate cause in this case. The sole issue was whether appellant negligently failed to make reasonable efforts to warn appellee's doctors. If appellant did so fail, it is liable regardless of anything the doctors may or may not have done. If it did not so fail, then it is not liable for appellee's injury. The issue was to be resolved by the jury, and we see no error in the court's instruction."

*Id.* at 151.

To the extent that *Strong v. E.I. DuPont de Nemours Co.,* 667 F.2d 682, 687 (8th Cir.1981), cited by the majority, may be inconsistent with the above cited cases,[2] we have no alternative but to decline to follow it in this diversity action. Indeed, this Court has taken a contrary position in *Sterling Drug, Inc. v. Cornish* and *Sterling Drug Co. v. Yarrow.* In both cases, a physician administered the drug, yet relief was granted to the plaintiff against the drug company because it failed to warn against the possibility of side effects.

I would remand for a new trial at which the jury would be instructed to determine, first, whether an adequate warning was given to Dr. Murphy, and if not, whether Dr. Murphy was fully aware of the risks of using the equipment in the manner that he did. If the answer to both questions is

---

**2.** I do not believe it to be inconsistent. It denied relief on the theory that the trial court, as the finder of fact, could determine from the evidence that the deceased employee himself knew of the danger. Here, the jury could find that the plaintiff neither knew nor should have known of the dangers. The following cases cited in *Strong* parallel *Strong* in that in each the injured or deceased employees *knew* of the

danger involved. *See Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 464–65 (5th Cir.1976); *Madrid v. Mine Safety Appliance Co.,* 486 F.2d 856, 860 (10th Cir.1973); *Lockett v. General Electric Co.,* 376 F.Supp. 1201, 1208–09 (E.D.Pa.1974), *aff'd,* 511 F.2d 1394 (3d Cir.1975). The other cases cited in *Strong* are not at all relevant to the issues in this case.

"no," then the plaintiff is entitled to recover damages from Picker.