555 F.2d 245
 Kristina K. DALKE, a minor, by her Guardian ad Litem, Kay
Dalke, Plaintiff- Appellant,
v.
The UPJOHN COMPANY, a corporation, Lederle Laboratories (a
division of American Cyanamid Co.), a corporation,
Pfizer Laboratories Division, Pfizer,
Inc., a corporation,
Defendants-Appellees.
 No. 76-1180.
 United States Court of Appeals,
Ninth Circuit.
 June 3, 1977.
 
 Howard P. Pruzan, argued, Miracle & Pruzan, Seattle, Wash., for plaintiff-appellant.
 James Bauer, argued, Reed, McClure, Moceri & Thonn, Seattle, Wash., for appellee Upjohn.
 William R. Hickman, argued, Deterls, Draper & Marinko, Seattle, Wash., for Lederle Lab.
 Thomas V. Harris, argued, Seattle, Wash., for Pfizer, Inc.
 Appeal from the United States District Court for the Western District of Washington.
 Before WRIGHT, GOODWIN and ANDERSON, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Kristina Dalke was a sickly child since her birth on August 8, 1964. Often afflicted with upper respiratory infections, she was treated with tetracycline-based prescription drugs by her family physician from January 7, 1965 to March 22, 1973. She now suffers from permanent discoloration of her teeth alleged to be caused by her ingestion of tetracycline.
 
 
 2
 Predicating liability on failure adequately to warn, Dalke sued The Upjohn Company, Lederle Laboratories and Pfizer Laboratories Division, Pfizer Inc., manufacturers of Panalba, Declomycin and Terramycin respectively. The drug manufacturers' motions for summary judgment were granted by the district court. On Dalke's appeal, we reverse and remand.
 
 I.
 THE WARNINGS
 
 3
 The Food & Drug Administration notified the three companies in 1962-63 that their tetracycline-based drugs had tooth-staining propensities in young children. As of 1965 the following warning appeared both in the package inserts of the drugs (under the heading "Precautions and Side Effects") and in the Physicians' Desk Reference ("PDR"):
 
 
 4
 (Tetracyclines) may form a stable calcium complex in any bone forming tissue with no serious harmful effects reported thus far in humans. However, use of (any tetracycline drug) during tooth development (= last trimester of pregnancy, neonatal period and early childhood) may cause discoloration of the teeth (= yellow-gray-brownish). This effect occurs mostly during long-term use of the drug but it has also been observed in usual short treatment courses.
 
 
 5
 In 1971, for reasons that do not appear in the record, some package inserts were changed to read, under the heading "Warnings":
 
 
 6
 The use of drugs of the tetracycline class during tooth development (last half of pregnancy, infancy and childhood to the age of 8 years) may cause permanent discoloration of the teeth (yellow-gray-brown).
 
 
 7
 This adverse reaction is more common during long-term use of the drugs but has been observed following repeated short-term courses. Enamel hypoplasia has also been reported. Tetracycline drugs, therefore, should not be used in this age group unless other drugs are not likely to be effective or are contraindicated.
 
 
 8
 Thus from the period 1965 to 1971 there were these changes: the information was moved from the "side effects" heading to the "warning" heading, the word "permanent" was inserted in front of the word "discoloration", the danger of enamel hypoplasia was brought to the physician's attention, and a caveat as to limited use was added.
 
 II.
 RESTATEMENT (SECOND) OF TORTS § 402A
 
 9
 Restatement (Second) of Torts § 402A imposes strict liability on anyone who sells a product in a defective condition unreasonably dangerous to the consumer. Washington law, applicable in this diversity case, recognizes the applicability of strict tort liability to manufacturers. Ulmer v. Ford Motor Co., 75 Wash.2d 522, 452 P.2d 729 (1969). Although Washington has had no occasion to pass upon the question whether strict liability would apply to prescription drugs, no party seriously contends that Washington would not follow the trend to do so. See McEwen v. Ortho Pharmaceutical Corp., 270 Or. 375, 528 P.2d 522 (1974).
 
 
 10
 Comment (k) to Section 402A indicates that unavoidably unsafe products are not defective or unreasonably dangerous if properly prepared and accompanied by adequate directions and warnings. There is no allegation that these tetracycline drugs were not properly prepared. Only the warnings are challenged.
 
 
 11
 The duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. As a medical expert, it is then his duty to take into account the propensities of the drug and the susceptibilities of the patient and make an informed decision. See Reyes v. Wyeth Laboratories, 498 F.2d 1264, 1276 (5th Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); Davis v. Wyeth Laboratories, 399 F.2d 121, 130 (9th Cir. 1968); Restatement (Second) of Torts § 388, comment (g).
 
 
 12
 Dr. Corlett, the treating physician, did testify that he read the PDR and package inserts as they came out or at least that he was aware of the warnings contained therein. The factual question underlying the legal issue of whether the warnings were adequate is whether the manufacturers met their duty of promulgating warnings commensurate with their actual knowledge gained from research and adverse reaction reports as well as commensurate with their constructive knowledge as measured by scientific literature and other available means of communication. See McEwen, 528 P.2d at 528. On this factual issue turns the appropriateness of summary judgment.
 
 III.
 SUMMARY JUDGMENT
 
 13
 Summary judgment is proper only where there is no genuine issue of any material fact, or where, viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. Stansifer v. Chrysler Motors Corp., 487 F.2d 59, 63 (9th Cir. 1973). If the nonmoving party has raised a genuine issue of material fact and the evidentiary matter in support of the motion does not establish the absence of the genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented. Adickes v. S. H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
 
 
 14
 In opposition to the summary judgment motion, plaintiff submitted an affidavit of Dr. Corlett stating that, had he received more stringent warnings at an earlier date, he would "in all likelihood" have chosen an antibiotic other than tetracycline to treat Kristina.[1] Although this statement appears questionable in light of Dr. Corlett's actual practice, Kristina's medical history and in light of certain deposition testimony, the district court properly decided that the affidavit created a factual conflict not properly resolved on a motion for summary judgment. The court went on to decide, however, that this conflict was immaterial because the warnings were adequate in that they gave the doctor reasonable notice of the potential harm.
 
 
 15
 We disagree with the district court that the issue of adequacy could be reached because we find that an issue of material fact underlying the question of adequacy remains in dispute. This factual issue is whether defendants disclosed in their warnings all side effects which they knew or should have known at the time these effects were discovered.
 
 
 16
 The summary judgment motion was predicated in part on defendants' answers to plaintiff's first interrogatories. Interrogatory No. 8 read:
 
 
 17
 List all of the adverse side effects of said product known to defendant, stating as to each such side effect the date upon which defendant first became cognizant of or had notice concerning such side effect.
 
 
 18
 Defendants' answers seem full and complete except in one respect. Enamel hypoplasia[2] is never listed as a known side effect.[3] Yet by the fact that this condition was listed in the 1971 warning it is clear to the court that this condition must have been brought to the companies' attention at some prior point.
 
 
 19
 It does not matter whether Kristina suffers from this condition or alleged in her complaint that she did. What is important is that this was a factor which made the later warnings stronger; it was a condition not named in the 1965 warnings. That this is important is indicated by Dr. Corlett's affidavit stating that stronger earlier warnings might have changed his course of action. That Kristina now alleges that she suffers from enamel hypoplasia is immaterial.
 
 
 20
 By the omission of this side effect from their answers to Interrogatory No. 8, defendants have failed to demonstrate the absence of any genuine issue of material fact. Rather an issue remains as to when they learned of enamel hypoplasia as a possible adverse side effect to tetracycline usage. Without this information, this court is unable to conclude that defendants met their burden of providing adequate warnings based on information which they knew or should have known.
 
 
 21
 If on remand defendants make another summary judgment motion and make a more complete disclosure of all known side effects, the burden will shift to plaintiff to come forth with specific facts showing, through the use of medical reports or other literature, that defendants knew or should have known of other dangerous side effects which they did not timely reveal in their warnings. If plaintiff fails to demonstrate the presence of this issue of fact, it will be proper for the trial judge to decide the legal question of the adequacy of the warnings and proceed to final judgment.
 
 IV.
 PFIZER
 
 22
 Pfizer makes the additional argument that it should be dismissed from the case because its product, Terramycin, was administered only once during Kristina's teeth-forming years. Even though there is no evidence that the one prescription caused plaintiff's dental condition, we note that the segregation of fault is a jury question.
 
 V.
 PROXIMATE CAUSE
 
 23
 Appellees also argue that even if their warnings were inadequate they are not liable because their hypothetical failure to warn was not a proximate cause of Kristina's condition. They cite Douglas v. Bussabarger, 73 Wash.2d 476, 478, 438 P.2d 829, 831 (1968), as support. There the physician testified that he relied on his own knowledge of anesthetics in making his judgmental decision and did not read the labeling on the container. In our case, although Dr. Corlett could not recall which PDR entry or label he read, he indicated that he had read and relied on one of them. In light of the similarity between the three companies' warnings we do not believe that his failure to identify the one specific entry he read should break the chain of causation.
 
 VI.
 CONCLUSION
 
 24
 Because all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the moving party, 6 J. Moore's Federal Practice P 56.23, the judgment is reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 We will consider the affidavit because it was considered by the district court and thus is part of the record on appeal
 
 
 [2]
 A condition in which enamel flakes away from the dentin of the tooth
 
 
 [3]
 See, e. g., Exhibit D. Clerk's Transcript at 186-87