**CONSOLIDATED GAS COMPANY OF FLORIDA, INC., Plaintiff,**

v.

**CITY GAS COMPANY OF FLORIDA, Defendant.**

**No. 83–1010–CIV–MARCUS.**

United States District Court, S.D. Florida.

Oct. 4, 1985.

William J. Dunaj, Mershon, Sawyer, Johnston, Dunwoody & Cole, Miami, Fla., for plaintiff.

Gary S. Brooks, Fine, Jacoson, Schwartz, Nash, Block & England, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER

MARCUS, District Judge.

THIS CAUSE has come before the Court upon three Motions for Summary Judgment filed in the aforementioned matter pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 10J of the General Rules for the United States District Court for the Southern District of Florida: *first,* Defendant CITY GAS COMPANY of Florida (hereinafter "CITY GAS") seeks final summary judgment in its favor as to the Amended Complaint of Plaintiff, CONSOLIDATED GAS COMPANY of Florida (hereinafter "CONSOLIDATED"), which charges the Defendant CITY GAS with unlawful monopolization and attempted monopolization in violation of Section 2 of the Sherman Act; *second,* Defendant CITY GAS seeks summary judgment in its favor as to its own Amended Counterclaim insofar as it alleges that Plaintiff CONSOLIDATED in fact violated Section 2 of the Sherman Act for monopolization and attempted monopolization (Count II of Defendant's Amended Counterclaim); and, *finally,* Plaintiff CONSOLIDATED has moved this Court for summary judgment in its favor on all three counts of Defendant's Amended Counterclaim (which allege violations of Section 1 and 2 of the Sherman Act, and Section 3 of the Clayton Act). Each moving party claims there are no material issues of fact in dispute and that each is entitled to judgment as a matter of law. Only Plaintiff CONSOLIDATED has not moved for summary judgment in its favor as to the contentions which it has made in its Amended Complaint.

Hearing was held on these motions by the Court on October 1, 1985. For reasons stated herein each of the three summary judgment motions are denied.

## I. BACKGROUND

By way of preface, a brief outline of some of the background surrounding this case and the charges and countercharges which have arisen should be laid out. Plaintiff CONSOLIDATED has brought suit against Defendant CITY GAS in federal court alleging that the Defendant CITY GAS violated Section 2 of the Sherman Act by monopolizing and attempting to monopolize the natural gas market in south Dade County. Plaintiff has sued under 15 U.S.C. Sections 2, 15 and 26, and the Sherman Anti-Trust Act and Clayton Anti-Trust Act seeking injunctive relief, damages and treble damages, costs and attorneys' fees.

Plaintiff has charged Defendant with possessing and illegally exercising monopoly power over the aforesaid market, and with having wrongfully deprived Plaintiff of access to natural gas while Defendant allegedly took all of Plaintiff's commercial customers and some of its residential customers, thereby destroying Plaintiff's ability to compete. Plaintiff specifically alleges that Defendant derived this monopoly power from a territorial agreement not to compete with People's Gas Systems, the only other major natural gas distributor in South Dade; from a grant to Defendant by the Federal Energy Regulatory Commission (hereinafter "FERC") of the right to purchase natural gas in sufficient bulk to serve many more customers than it serves, and from the fact that Defendant had the only FERC allocation to buy natural gas in the territory it serves; from the fact that Defendant allegedly occupied a "bottleneck" position regarding the transportation of natural gas in portions of Dade County; and finally from its exclusive possession of essential facilities necessary for providing natural gas service to the relevant market area.

The Defendant CITY GAS has filed an Amended Counterclaim alleging in three counts that Plaintiff violated Section 1 of the Sherman Act by engaging in contracts, combinations and conspiracies having as their purpose and effect the restraint of trade with respect to the purchase and resale of gas products; that Plaintiff violated Section 2 of the Sherman Act in that it unlawfully possessed and exercised monopoly power in the subdivision and that Defendant was substantially prohibited or foreclosed from selling its product within the Bel Air/Point Royale subdivision; and finally that Plaintiff violated Section 3 of the Clayton Act by virtue of an illegal exclusivity agreement between Plaintiff and the subdivision developers and a restrictive covenant running with the land and providing that no liquified or natural gas would be sold unless sold and supplied by Plaintiff within the subdivision, all in violation of 15 U.S.C. Sections 1, 2 and 14.

At the core of Defendant's prayer for relief is the assertion that Plaintiff violated the antitrust laws by these arrangements, improperly binding subdivision customers to purchase gas to be used for power, heating or cooking exclusively from Plaintiff. Defendant contends that as a direct and proximate result of these arrangements, Defendant has been "precluded," or "foreclosed" or "prohibited" or "substantially prohibited" or "delayed" from selling natural gas in the subdivision. Like Plaintiff, Defendant seeks declaratory and injunctive relief, damages and treble damages, costs and attorneys' fees.

The battleground of this case will be fought over the distribution and sale of LP gas and natural gas in a relevant market area deeply in controversy. Both LP and natural gas are used to fuel appliances and to provide general energy needs in homes and businesses. The Plaintiff has distributed LP gas for some twenty years in the Bel Air/Point Royale area in south Dade County to roughly 2000 customers. The distribution and sale of liquid LP gas is not regulated by the Florida Public Service Commission or any other governmental agency. LP gas resale rates, however, were subject to a federal price ceiling from 1973 to 1981. Unlike natural gas which is heavily regulated by government and still remains regulated as to price, petroleum products were deregulated by Executive Order of the President. With the decontrol

of the price of LP gas, but not natural gas, the cost of LP gas has apparently increased substantially more rapidly than the cost of natural gas, and, with that demand for cheaper natural gas has also apparently increased.

The Defendant CITY GAS, a public utility, for more than some twenty years, has supplied natural gas to a variety of communities in Dade County, perhaps as many as 100,000 residential, commercial and industrial customers. The purchase of natural gas by Defendant is regulated both as to right and price by FERC; the resale of natural gas is also regulated by the Florida Public Service Commission.

Sometime in early 1982, the Defendant for the first time began to service subdivision customers who had been supplied previously with LP gas by Plaintiff, with natural gas. A lawsuit was filed subsequently by Plaintiff sometime in June of 1982 against Defendant in Dade County Circuit Court challenging Defendant's efforts to place gas mains and lines in utility easements which Plaintiff claimed it had been granted many years earlier. A preliminary injunction was initially granted by the Circuit Court enjoining Defendant from extending additional gas lines into the Bel Air/Point Royale subdivision and a bond was posted. The injunction was subsequently dissolved.

The trial court struck down the easements as being unenforceable because they were "monopolistic," and subsequently the Third District Court of Appeals ruled that that portion of the easement agreement which gave Plaintiff an exclusive franchise did not create an exclusive property right enforceable by Plaintiff as against the Defendant, and that the easement agreement by its terms did not create an exclusive right of way easement. It held that the Defendant was not precluded by the easement agreement from using the land in a manner not inconsistent with the non-exclusive rights vested in Plaintiff. A subsequent settlement agreement arising out of the state litigation was entered into between Plaintiff and Defendant.

After the deregulation of LP gas, Plaintiff applied to the FERC requesting its own allocations of natural gas in order to be able to offer its subdivision customers natural gas. Defendant in turn intervened in Plaintiff's FERC proceedings opposing Plaintiff's request for a natural gas allocation. During the course of the proceedings, Defendant offered to sell natural gas to Plaintiff, first at a cost of ten cents per therm, and finally at a cost of seven cents per therm, a price which Defendant has characterized as reasonable, and Plaintiff has termed as being so prohibitively high that it amounts to a refusal to sell at all.

The instant law suit was filed in federal court on April 22, 1983. The economic battle over the Bel Air/Point Royale subdivision has ebbed and flowed since 1982.

## II. DEFENDANT'S SUMMARY JUDGMENT MOTION AS TO PLAINTIFF'S AMENDED COMPLAINT

Defendant has moved for summary judgment as to Plaintiff's Section 2 Sherman Act Amended Complaint, alleging that no material facts are in dispute and that as a matter of law it is entitled to final judgment.

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit recently explained:

"In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.*] *Marsh,* 651 F.2d [983] at 991 [ (5th Cir.1981) ]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics [Techniques, Inc. v. Wackenhut Protective Systems, Inc.],* 669 F.2d [1026] at 1031 [ (5th Cir.1982) ]; *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970).

"Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.,* 555 F.2d 245, 248–49 (9th Cir.1977)."

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368 (11th Cir.1982).

*See* also *Amey, Inc. v. Gulf Abstract & Title,* 758 F.2d 1486, 1502 (11th Cir.1985).

The Supreme Court has likewise addressed the heavy burden placed upon the summary judgment movant in an antitrust case in these terms:

"... We look at the record on summary judgment in the light most favorable to ... the party opposing the motion, and conclude here that it should not have been granted. We believe that summary procedure should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

The Plaintiff and Defendant do not contest those governing standards, only their application to the record of this case.

 Defendant claims that Plaintiff's Sherman 2 monopolization allegation can be disposed of on the face of this record arguing that no material issues of fact are in dispute, only that the significance and interpretation of those facts are in dispute. We disagree and find that there are *many* material issues in dispute at this stage of the proceeding which compel this Court to deny Defendant's Motion for Summary Judgment as to Plaintiff's Amended Complaint. Among the material fact issues still in substantial dispute, the following must be included: the definition of appropriate product and geographic market; whether either Plaintiff or Defendant possessed or attempted to acquire monopolistic power within the relevant market; whether Plaintiff or Defendant was dangerously close to accumulating monopoly power; whether Defendant offered to sell natural gas to

Plaintiff at a reasonable price; whether either party evinced monopolistic intent; whether Defendant's gas lines or natural gas allocations were essential facilities; whether Defendant's intervention in the FERC proceedings, or its purported involvement in Tony Roma's lawsuit against Plaintiff, or its conduct of this litigation were "mere shams" motivated solely by the desire to harass and deter as part of a course of predatory conduct; whether either party was injured *in fact* as a result of the other party's purported violations of the antitrust laws. On this record Defendant has not remotely met his burden as movant seeking summary judgment.

Plaintiff's claim, simply put, is that Defendant monopolized and attempted to monopolize the relevant market. It is by now axiomatic that the threshhold fact question in determining monopoly power is definitional: what is the relevant market. Depending upon its configuration, conduct may or may not be found to violate either Section 1 or 2 of the Sherman Act. The concept of relevant market comprehends both the relevant geographic market and the relevant product market. On the record before this Court, Defendant has not established either. In *United States v. Grinnell Corporation*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966),) the Supreme Court noted that a Section 2 Sherman Act monopoly contains these elements:

(1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of the superior product, business acumen, or historic accident.

Moreover, to establish an attempt to monopolize in violation of Section 2 the Plaintiff must show both a dangerous probability of monopoly in the relevant market, predatory conduct, and requisite intent. The record remains unclear and in dispute about these matters.

Defendant CITY GAS has not at this stage established the relevant market, probably the most central question. Plaintiff has argued that the relevant geographic market is the entire service area in which Defendant operates; Defendant argues that the relevant market or submarket is bounded by the Bel Air/Point Royale subdivision. In *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 327, 81 S.Ct. 623, 627, 5 L.Ed.2d 580 (1961), a seminal case defining relevant geographic market and cited by both parties, the Supreme Court offered this definition:

"The area of effective competition in the known line of commerce must be charted by careful selection of the market area in which the seller operates, and to which the purchaser can practically turn for supplies."

The availability to a buyer of an alternative supply and competitive price disadvantages arising from transportation costs are significant in ascertaining the relevant market area. In short, the record is woefully inadequate to permit this Court to determine relevant geographic market now.

■ The same material fact issue remains unresolved as to the appropriate definition of product market. Again, any finding of monopoly power requires establishing the relevant product market. Plaintiff has contended that the product market is a natural gas product market; Defendant has suggested that it must also include the LP gas market because both are presently available to subdivision customers. While the definition of geographic market is quite apparently the more significant fact question in this case, both product and geographic market are in substantial dispute, and defendant has failed to meet its burden on these central fact issues. Any summary judgment motion going to an alleged violation of Section 2 of the Sherman Act must therefore be denied. Moreover, there are a variety of additional material facts in dispute about Plaintiff's claim, a number of which we have already alluded to (see discussion *supra* at p. 1361).

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Amended Complaint is HEREBY DENIED.

### III. DEFENDANT'S SUMMARY JUDGMENT MOTION AS TO ITS AMENDED COUNTERCLAIM

■ Defendant CITY GAS also seeks summary judgment in its favor as to its own Amended Counterclaim insofar as it alleges that Plaintiff violated Section 2 of the Sherman Act by monopolizing and attempting to monopolize the relevant market areas. Again Defendant argues that no material facts are in dispute, only the interpretation of those facts is at issue. And again Defendant has failed to meet its burden as summary judgment movant under Rule 56. It is not entitled to summary judgment because it has not proven that the material facts necessary for a finding of a Section 2 monopoly violation are undisputed. No finding that Plaintiff acquired and exercised monopoly power or that it attempted to acquire a monopoly can be made without proving the existence of that power within the context of a relevant market.

Defendant/movant has not established on this summary record what is the appropriate market which Plaintiff purportedly has dominated. Plaintiff has contended again that the relevant geographic market is Defendant's service area, not Bel Air/Point Royale, and that the product market is natural gas. Defendant has offered little evidence at this stage to conclusively establish for purposes of summary judgment what the relevant market is. Defendant has not established the pricing relationships between LP and natural gas, nor has it factually adduced anything remotely resembling conclusive proof that the geographic market is Bel Air/Point Royale. Defendant CITY GAS also has failed to prove on this summary record what damages it may have suffered as the proximate cause of Plaintiff's purported antitrust violations.

Accordingly Defendant's Motion for Summary Judgment As To Its Amended Counterclaim is HEREBY DENIED.

### IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S COUNTERCLAIMS

■ Plaintiff/Counterdefendant CONSOLIDATED has moved this Court for Summary Judgment in its favor on all three counts of Defendant's Amended Counterclaim. Plaintiff has mounted a powerful argument contending that no material facts are in dispute as to Defendant's Amended Counterclaims and that as a matter of law it is entitled to final summary judgment. Plaintiff contends the undisputed facts establish that Defendant was never foreclosed or precluded from selling natural gas within the subdivision and thus Defendant cannot prove that he was injured in any way by any conduct of Plaintiff.

He argues that with regard to the period prior to June 1, 1982 the facts are undisputed that Defendant never considered selling natural gas to Plaintiff's customers in the subdivision, that Defendant first attempted to supply Plaintiff's customers in 1982, and that prior to June 1, 1982 (the date Plaintiff sued Defendant in Dade County Circuit Court) Defendant had no knowledge of the recorded easements which form the core of Defendant's counterclaims. Thus since Defendant was unaware of any exclusive agreements between Plaintiff and its customers it can hardly be alleged that Defendant was injured as a direct result of those provisions.

Plaintiff also argues that for the period June 16, 1982 through November 30, 1982 —the time during which the State Court's preliminary injunction enjoined Defendant from providing additional natural gas service within the subdivision—a settlement and an unambiguous release was entered into between the parties thereby obviating any damages Defendant may have suffered because of Plaintiff's conduct during this time frame.

Plaintiff argues further that for the so called post-injunction period, after November 30, 1982—the date the Circuit Court

dissolved its injunction—the Defendant was utterly free to sell natural gas throughout the subdivision and therefore was not foreclosed from penetrating this subdivision. Finally, Plaintiff argues that it was not foreclosed as a matter of law from selling to Plaintiff's customers because as a public utility it always had the power of eminent domain to condemn any easements which it may have needed. In short, Plaintiff argues that to the extent Defendant has pegged his counterclaims on a theory that he was improperly foreclosed or precluded from the subdivision because of Plaintiff's conduct, as a matter of law, on the face of this record, he cannot recover because he cannot show injury proximately caused by Plaintiff.

Plaintiff further argues (1) that he is entitled to summary judgment as a matter of law because Defendant had a "full and fair opportunity" to litigate its antitrust claims in state court, and that the doctrine of *res judicata* should now bar any attempt to litigate the same antitrust claims and facts; and (2) that alternatively, Defendant is collaterally estopped from litigating in federal court the meaning and effect of the Plaintiff's easements and agreements since prior state court litigation between the parties has conclusively established their non-exclusive nature.

Defendant in response has disputed none of the facts relied upon by Plaintiff in support of this summary judgment motion, but rather has argued about the meaning and significance of those facts. Defendant has contended that actual foreclosure is not required in order to prove a violation of the antitrust laws citing in support *American Tobacco Co. v. United States*, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946), and that regardless of whether Plaintiff's unlawful conduct was actually exercised against Defendant or Plaintiff's customers, Plaintiff's "undisputed activities" allege a violation of the federal antitrust laws and that is all the law requires. Defendant *also* argues that Plaintiff's conduct in fact measurably impeded Plaintiff's subdivision customers' willingness to seek alternative sources of power from Plaintiff's competitors including Defendant, and that Defendant was injured in the process.

Defendant also responds that the doctrines of *res judicata* and *collateral estoppel* should not and do not preclude Defendant from alleging in federal court by way of counterclaim that Plaintiff violated Section 2 of the Sherman Act. Defendant also argues that Plaintiff cannot sidestep liability for antitrust violations by asserting that Defendant had the power of eminent domain because Defendant should not be required to exercise that power as a condition precedent to effectively competing in the subdivision.

A. *Foreclosure—Damages—Causation*

Plaintiff's foreclosure argument and Defendant's response require an examination of the concepts of injury and causation in antitrust law. Section 4 of the Clayton Antitrust Act allows treble damage recovery to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws...." 15 U.S.C. § 15. The very definition of Clayton Act 4 requires any claimant to allege *actual injury*. *Amey, Inc. v. Gulf Abstract Title, Inc., supra* at 1492. It is equally clear that the injury must be of the type the antitrust laws were designed to prevent and that there be a sufficient causal connection between Defendant's violative conduct and Plaintiff's injury. *See* Areeda & Turner, *Antitrust Law*, Section 163 at 163–168 (1978). While causality and injury remain critical elements, the methods of proof may differ. Some courts have formulated the "direct injury test" to establish requisite causality between proscribed conduct and harm; others have posited a "target area" test. The former test looks at the immediate connection between the parties; the latter examines whether the claimant "is within the area of economy which is endangered by a breakdown of

competitive conditions in a particular industry." *Conference of Studio Unions v. Loew's,* 193 F.2d 51, 54–55 (9th Cir.1951), *cert. denied,* 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952). Still another formulation of "target area" has imposed the test that Plaintiff be a foreseeable victim of the conduct. Still other tests have examined standing to sue in terms of whether Plaintiff's injuries fall within the zone of interest protected by the laws. See discussion in *Amey, Inc. v. Gulf Abstract & Title, Inc., supra,* at 1492–97, and *Malamud v. Sinclair Oil Corp.,* 521 F.2d 1142 (6th Cir. 1975).

The test applied to determine standing to sue in the Eleventh Circuit is laid out at length in *Amey, Inc. v. Gulf Abstract & Title, Inc., supra* at 1496:

"The Eleventh Circuit has adopted the 'target area' test used by the Fifth Circuit. *See Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.,* 710 F.2d 752, 762 (11th Cir. 1983). The rule of antitrust standing in this circuit, the target area test, does not produce results materially different from the results obtained in *Blue Shield [of Virginia v. McCready,* 457 U.S. 465, 478 n. 14, 102 S.Ct. 2540, 2548 n. 14, 73 L.Ed.2d 149 (1982) ] and Associated General [Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 535, 103 S.Ct. 897, 907, 74 L.Ed.2d 723 (1983) ]. See Construction Aggregate Transport,* 710 F.2d at 762, 765, 765 n. 28. First, as in *Blue Shield,* we recognize that a 'target' does not have to be in the same area of the market as the antitrust act; a victim is a target when located in the same area of the market affected by the antitrust act or in another area of the market 'so closely related' that both may be considered targets of the same anti-competitive act. *Construction Aggregate Transport,* 710 F.2d at 764; *Blue Shield,* 457 U.S. at 479–81, 102 S.Ct. at 2548–49. Second, our test is highly responsive to the Supreme Court's policies of denying standing to plaintiffs with injuries that are too remote and whose injuries are not 'the type of loss which a violation of antitrust law would be likely to cause.' *Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 710 (11th Cir. 1984); *Construction Aggregate Transport,* 710 F.2d at 764, 765. *See Associated General,* 459 U.S. at 540, 103 S.Ct. at 910; *Blue Shield,* 457 U.S. at 479, 102 S.Ct. at 2548. *See also Jeffrey v. Southwestern Bell,* 518 F.2d 1129, 1131 (5th Cir.1975). Third, the Supreme Court's policy against granting standing where the possibility exists of duplicative recovery by the indirectly injured plaintiff and the more directly injured person who has yet to sue, *see Associated General,* 459 U.S. at 545, 103 S.Ct. at 912, *Blue Shield,* 457 U.S. at 475, 102 S.Ct. at 2546, has long been part of this circuit's and the former Fifth Circuit's target area test. *Construction Aggregate Transport,* 710 F.2d at 764; *Jeffrey v. Southwestern Bell,* 518 F.2d at 1131. The Supreme Court cases, therefore, provide policy guidance consistent with that which is the foundation of this circuit's target area test. *See Midwestern Waffles, Inc.,* 734 F.2d at 710. *See also Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp.,* 711 F.2d 989, 999 (11th Cir.1983)."

The problem of conclusively determining causation between Plaintiff's purported violations of the antitrust laws, and finding any measurable harm or injury to Defendant/Counterclaimant may be exceedingly difficult even after a full trial on the merits. To do so on a summary judgment motion, with an incomplete record is ill-advised except on the clearest and most undisputed factual base. Here Plaintiff has advanced a powerful argument that Defendant was not foreclosed from the subdivision nor precluded from soliciting its customers because of Plaintiff's conduct, and therefore no harm or injury could be shown

as a matter of law. While Defendant/Counterclaimant clearly must prove that he actually suffered damages and that those damages were proximately caused by Plaintiff's conduct, this Court is not prepared at this stage to conclude that as a matter of law it will be impossible for him to do so. While the stipulated facts that Defendant neither considered selling natural gas in the subdivision before 1982, nor had knowledge of the easement agreement before June 1982 are very probative, they do not conclusively resolve the basic questions of causation and injury. We note in passing that the Deposition of Jack Langer does not fully answer the question of what Defendant's motives or intentions were in never attempting to penetrate the subdivision before June 1982. Langer does however offer the explanation that "we thought it was their territory, we were led to believe over the years through conversations and meetings, hey that's our area, and that's why we never went in." Deposition of Jack Langer, September 17, 1985 at 71. Defendant's motives and intentions may have some relevance on the issue of foreclosure.

Moreover, even assuming that Defendant was in no way foreclosed or precluded from selling natural gas in the subdivision *by Plaintiff's conduct,* it is not beyond dispute that if the evidence, the claims and inferences are all viewed in a light most favorable to Defendant, he will be unable to satisfy the injury requirement of Clayton Act Section 4. Defendant might be able to prove: (1) that Plaintiff's agreements in fact inhibited and threatened its subdivision customers from seeking alternative supplier(s) of gas products in the market place; (2) that but for the exclusivity arrangements some appreciable number of customers would have sought out Defendant as a possible source of alternative energy (natural gas); (3) that Defendant was the natural alternative source operating in the same relevant market of perhaps in another area of the market "so closely related"; (4) that the area of the economy

threatened with a competitive breakdown of competitive conditions is the sale of gas products in Bel Air/Point Royale; and (5) that Defendant actually suffered measurable damages directly as a result of Plaintiff's so-called exclusive arrangements with its customers. In short, while the undisputed facts that Defendant never sought entry into the subdivision before 1982 and was wholly unaware of an exclusive easement or restrictive covenants are very relevant to Defendant's claim of injury and requisite causation, this does not end the analysis.

Depending on the definition of relevant market, the impact of Plaintiff's conduct on its customers, and the pricing relationship between LP and natural gas, it is at least possible that Defendant can prove his counterclaims at trial. In any event at this stage in the proceedings it would be improvident to preclude it from trying.

## B. *Res Judicata*

Plaintiff also seeks summary judgment in its favor as to Defendant's counterclaims on the ground that they are barred by the doctrine of *res judicata.* That doctrine provides that a judgment in a prior lawsuit between the same parties bars suit on a second action as to matters already actually litigated and those which could have been litigaged. *Johnson v. United States,* 576 F.2d 606, 611 (11th Cir.1978). In June of 1982 CONSOLIDATED filed suit in Dade County Circuit Court Against CITY GAS, seeking to enjoin CITY GAS from infringing upon easements CONSOLIDATED claimed were exclusive. As one of its defenses, CITY GAS contended that such exclusive easement was "unreasonable, in restraint of trade and ... against the public policy of the State of Florida." Defendant CITY GAS, however, did not counterclaim against Plaintiff under Florida's antitrust laws. Plaintiff urges that such a counterclaim was compulsory and should have been raised by CITY GAS if it wished to litigate the antitrust consequences of

CONSOLIDATED's easements. Moreover, Plaintiff asserts that the federal and Florida antitrust laws are virtually identical and that the facts which would have supported a counterclaim in state court are substantially identical to facts raised by CONSOLIDATED in support of its defense of the state suit and in the instant antitrust lawsuit. Therefore, Plaintiff urges that CITY GAS' counterclaim is barred as *res judicata.*

 This Court has little doubt that, at the time of the state litigation, any claim CITY GAS had against CONSOLIDATED for violation of state antitrust laws would fairly have fallen within the Florida statutory definition of a compulsory counterclaim. Florida Statute 1.170 provides, in pertinent part:

(a) *Compulsory Counterclaim.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading, the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

Rule 1.170 Fla.R.Civ.P. Having failed to raise this compulsory counterclaim, CITY GAS is surely barred by *res judicata* from again suing CONSOLIDATED under Florida's antitrust laws. This Court finds however, that CITY GAS is not barred from now litigating CONSOLIDATED's liability under the federal antitrust laws in federal court.

The Florida Antitrust Act of 1980, by its own terms, is modeled after its federal counterpart. Florida Statutes 542.18 and 542.19 parallel Sections 1 and 2 of the Sherman Act respectively. In fact, a statutory provision entitled "Rule of Construction and Coverage" expresses the intent of the Florida legislature that, in construing this chapter "due consideration and great weight be given to the interpretations of the federal courts relating to comparable anti-trust statutes." F.S. Section 542.32. Plaintiff urges that due to this rule of construction, litigation and recovery under CITY GAS' counterclaim would have been no different in state court than in this Court. We do not agree.

First, although Florida courts are directed to give "due consideration and great weight" to federal courts' interpretation of federal antitrust laws, Florida courts are not strictly bound by federal antitrust case law. Moreover, the Florida Antitrust Act does not contain "the substantive provisions of Section 3 of the Clayton Act." F.S. Section 542.32. Section 3 of the Clayton Act permits recovery against one who sells or leases a commodity on the condition that the purchaser or lessor shall not use or deal in the commodities of a competitor, where the effect of such lease, sale or condition may be to substantially lessen competition or tend to create a monopoly in any line of commerce. In particular, Section 3 permits recovery for illegal exclusivity and tieing agreements. CITY GAS' counterclaim, of course, seeks recovery under Sections 1 and 2 of the Sherman Act *and* Section 3 of the Clayton Act. Plaintiff has not demonstrated to this Court that recovery under Section 3 of the Clayton Act is fully and effectively subsumed by Florida Statutes 542.18 and 542.19. Therefore, contrary to Plaintiff's assertion, CITY GAS may not have been able to litigate in the Florida courts its Section 3 Clayton Act claim.

At most, Plaintiff may seek summary judgment as to those counts of the counterclaim which seek recovery under Sections 1 and 2 of the Sherman Act. Partial summary judgment on the basis of *res judicata* would do little for judicial economy or fairness, since the same operative fact pattern gives rise to each count of the counterclaim. Moreover, the federal courts are charged by Congress with construing and interpreting the federal antitrust laws,

over which they have been given exclusive jurisdiction.

Plaintiff relies upon the Supreme Court's recent opinion in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) in support of its contention that the counterclaim is barred by *res judicata*. In *Marrese*, the Court had before it the issue "whether a state court judgment may have preclusive effect on a federal antitrust claim that could not have been raised in the state proceeding." There, a federal antitrust action was initiated upon the same facts of an earlier action brought in the Illinois courts. While Illinois antitrust laws are "materially identical" to the Sherman Act, a claim under that state's laws was never asserted. The Supreme Court noted that the preclusive effect of a state court judgment in a subsequent federal lawsuit is generally determined by the federal full faith and credit statute, 28 U.S.C. Section 1738. *Id.*, at ——, 105 S.Ct. at 1331, 84 L.Ed.2d at 281. That statute directs a federal court to refer to the preclusion law of the state in which judgment was rendered. *Id.* The Supreme Court remanded the matter with instructions that the lower court determine the Illinois claim preclusion law. In so doing, the Supreme Court observed that most states' preclusion laws do not apply where the state court never had jurisdiction over the claim sought to be precluded. Therefore, under most states' laws, claim preclusion will not apply to causes of action within the exclusive jurisdiction of the federal courts. *Id.*, at ——, 105 S.Ct. at 1332, 84 L.Ed.2d at 282. The Court further found that

> "The jurisdictional competency requirement generally is understood to imply that state court litigation based on a state statute analogous to a federal statute, *e.g.*, a state antitrust law, does not bar subsequent attempts to secure relief in federal court if the state court lacked jurisdiction over the federal statutory claim.... We do not believe that federal

courts should fashion a federal rule to preclude a claim that could not have been raised in the state proceedings."

*Id.*, at ——, 105 S.Ct. at 1333 fn. 3, 84 L.Ed.2d at 283 fn. 3.

Both Plaintiff and Defendant agree that Florida claim preclusion law does not inform the application of *res judicata* to the instant counterclaim. This being so, Plaintiff suggests that this Court turn to the concurring opinion of Chief Justice Burger in *Marrese* which suggests that in a case such as this, where state law is silent, the federal court should formulate a federal rule of claim preclusion. The Chief Justice proposed a rule that would preclude a party from asserting a claim if it has had a "full and fair opportunity" to be litigated in an earlier action. He noted that such an opportunity has obtained where the state statute is "identical in all material respects with a federal statute within exclusive federal jurisdiction." *Id.*, at ——, 105 S.Ct. at 1337, 84 L.Ed.2d at 288.

To begin, state law does not apparently provide for recovery under the substantive equivalent of Section 3 of the Clayton Act. Therefore, CITY GAS never had a "full and fair opportunity" to litigate the claims currently before this Court. Moreover, this Court is aware of nothing in state law which calls for the preclusion of CITY GAS' federal antitrust claim. More importantly, the Court in *Marrese* expressed the strong interest of federal courts in determining claims brought under the federal antitrust statutes and construing those statutes. CITY GAS was never able to test the protections of the Sherman and Clayton Acts in the Florida Courts. It should be entitled to do so here. Accordingly, Plaintiff's Motion for Summary Judgment as against Defendant's counterclaims on the basis of *res judicata* is therefore DENIED.

### C. *Collateral Estoppel*

As an additional ground for summary judgment, Plaintiff contends that CITY

GAS is collaterally estopped from asserting in this action that Plaintiff's easements were exclusive and had the effect of foreclosing or excluding Defendant CITY GAS from competing in CONSOLIDATED'S service area. Specifically, Plaintiff points to the Third District Court of Appeal's opinion that its easement rights were, and are, non-exclusive.

That Court did rule that the Plaintiff's easement was non-exclusive. As a result, both parties are now collaterally estopped from relitigating the exclusivity of the easement.

The District Court of Appeals did not, however, rule that this lack of exclusivity in fact absolved CONSOLIDATED from antitrust liability. Instead, its opinion was confined to an analysis of the contract between CONSOLIDATED and the developer of the subdivision. That agreement purported to give CONSOLIDATED "an exclusive franchise" "to install and maintain gas tanks, gas lines, appliances and appurtenances" in the subdivision, and a "perpetual right-of-way easement." The District Court of Appeal found that neither provision of this agreement created an exclusive easement enforceable by CONSOLIDATED.

The doctrine of collateral estoppel "bars relitigation of the same issues between the same parties in a different cause of action." *Clean Water, Inc. v. Dept. of Environmental Regulation*, 402 So.2d 456, 458 (Fla. 1st D.C.A.1981). The essential elements of collateral estoppel are (1) identical issues and parties; (2) the issues must be fully litigated and determined in a contest; (3) which results in a final decision; (4) in a court of competent jurisdiction. *Lorf v. Indiana Insurance Co.*, 426 So.2d 1225 (Fla. 4th D.C.A.1983). Moreover, it has commonly been said that the determination of the issue in the prior action must have

been necessary and essential to the resulting judgment. *See e.g., Moore's Federal Practice* Section 443(2), at 759 (2d ed. 1984).

Here, the issues sought to be precluded were neither fully litigated before the state courts, nor were they necessary to the determination of the Third District Court of Appeal.

■ The ruling of the District Court of Appeal, as the ruling of the highest state court, is the controlling state court opinion. Its decision narrowly rests upon the terms of the contract between CONSOLIDATED and the developer of the subdivision. That Court did not find the contract was unenforceable as a restraint of trade. Therefore it cannot fairly be said that the issues before this Court were fully litigated in the state court proceeding.

The District Court of Appeal declined to adopt the finding of the Florida Circuit Court that CONSOLIDATED'S easement was unenforceable "since it was monopolistic and violates the long established policy of the State of Florida." Again, the higher court's decision was confined to contract principles. Moreover, even if the opinion of the Circuit Court could have preclusive effect in this action, collateral estoppel (which would work against *Plaintiff*) would have to be denied. Although CITY GAS raised the Florida antitrust laws as a defense to that action, the Circuit Court did not rest its finding upon those statutes. Rather it found the easement to be a restraint of trade and therefore unenforceable as a matter of *public policy*.[1] The Circuit Court did not hold that the easements contravened the Florida Antitrust Act.

Finally, as we have already noted, the opinion of the Circuit Court can have no preclusive effect here as that Court did

---

1. The opinion cites only two cases for this finding, *Stewart v. Stearns & Culver Lumber Co.*, 56 Fla. 570, 48 So. 19 (1908) and *Janet Realty Corp. v. Hoffman's Inc.*, 154 Fla. 144, 17 So.2d 114 (1944). Both recite the common law rule that agreements in restraint of trade are unenforceable as contrary to public policy.

not—and of course could not—have before it claims asserted under the Sherman and Clayton Acts. Moreover, CITY GAS could not have litigated in State court the substance of its claim under Section 3 of the Clayton Act, as the Florida statute does not apparently provide for a similar cause of action. In short, the claims asserted in CITY GAS' counterclaims were not fully litigated in the Florida Court. The Defendant CITY GAS is not collaterally estopped from litigating those claims in this Court.

## V. UNDISPUTED FACTS

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the following material facts are undisputed. Upon the trial of this action the facts so specified shall be deemed established.

1. CONSOLIDATED is a retailer of liquid petroleum gas ("LP gas") to consumers located in a portion of south Dade County, Florida known as the Bel Air/Point Royale Subdivision ("Subdivision"). CONSOLIDATED distributes LP gas through a system of underground pipes to customers in the subdivision.

2. Prior to April, 1982, CONSOLIDATED was providing LP gas services to approximately 2,000 residential accounts and to 10 commercial accounts.

3. CITY GAS is a public utility, providing natural gas service through a system of underground pipes located in Dade County and other parts of Florida. CITY GAS' pipes and area of service totally surround CONDOLIDATED'S system.

4. CITY GAS is a major distribution company in Florida which purchases natural gas for service in over 23 Florida communities from Florida Gas Transmission ("FGT"), the sole wholesale pipeline supplier of natural gas for resale in Florida.

5. CITY GAS distributes natural gas to approximately 100,000 residential, commercial and industrial customers surrounding the territory served by CONSOLIDATED with LP gas.

6. CITY GAS, at all times material to its amended counterclaim, has had a natural gas allocation granted by the Federal Energy Regulatory Commission ("FERC") or its predecessor agency, empowering and entitling CITY GAS to purchase natural gas from FGT and to resell it to customers.

7. CITY GAS is a public utility under Florida law and, at all times relevant to its amended counterclaim, possessed the power of eminent domain entitling it to condemn and to pay just compensation for any real and/or personal property rights necessary for its provision of natural gas service to any customer.

8. CITY GAS did not consider selling natural gas to customers in the territory served by CONSOLIDATED until 1982.

9. Sometime in or about mid-1982, CITY GAS began to service customers, who had previously purchased LP gas from CONSOLIDATED, by converting them to natural gas supplied by CITY GAS.

10. In expanding its system into the subdivision, CITY GAS placed gas mains and lines in utility easements which had been granted to CONSOLIDATED by a recorded "Easement Agreement" dated December 13, 1963. This extension of CITY GAS' service was the first time CITY GAS serviced customers within the CONSOLIDATED service area. CITY GAS continued to expand its system to add more customers of CONDOLIDATED until the time an injunction was entered in state court.

11. Prior to June 1, 1982, when a state lawsuit was filed by CONSOLIDATED against CITY GAS and served upon CITY GAS thereafter, CITY GAS had no knowledge of the recorded "easement Agreement" dated December 13, 1963 or any of its provisions.

12. On or about June 1, 1982, CONSOLIDATED filed suit in Dade County Circuit Court against CITY GAS, seeking to enjoin CITY GAS from infringing upon the easements which had been granted to CONSOLIDATED by the recorded Easement Agreement dated December 13, 1963. On June 16, 1982, the Circuit Court issued an

Order Granting Preliminary Injunction, ordering CITY GAS to cease and desist from extending any additional gas lines into the subdivision until further order of the court and requiring CONSOLIDATED to post a $5,000 injunction bond. While the injunction was in effect, CITY GAS was permitted to continue supplying natural gas to the former CONSOLIDATED customers it had already hooked up to its system.

13. The preliminary injunction was dissolved by the Circuit Court in its Final Judgment dated November 30, 1982. Immediately after the Circuit Court dissolved the preliminary injunction, CITY GAS continued to extend its underground pipelines to provide natural gas service to homes and businesses located within the subdivision.

14. On March 6, 1984, the Third District Court of Appeal affirmed the Final Judgment on the *sole grounds* that (1) the portion of the Easement Agreement which gave CONSOLIDATED "an exclusive franchise" did not create an exclusive property right enforceable by CONSOLIDATED against CITY GAS, and (2) that the Easement Agreement by its terms gave CONSOLIDATED a "perpetual right of way easement" but did not create an *exclusive* right of way easement. The Court held that CITY GAS, a public utility, was not precluded by the Easement Agreement from using the servient land in any manner not inconsistent with the limited non-exclusive rights vested in CONSOLIDATED as the easement owner.

15. CITY GAS asserted an affirmative defense in the state court litigation that the recorded "Easement Agreement" was invalid as a restraint of trade but at no time did CITY GAS file or attempt to file a counterclaim alleging the illegality, under the Florida Antitrust Act of 1980 or other provisions of state or federal law, of any exclusive rights claimed by CONSOLIDATED in the easements in the subdivision.

16. On March 4, 1985 CONSOLIDATED and CITY GAS entered into a settlement in the form of a Stipulation pursuant to which the State litigation was ended with the Stipulated Order Directing Disposition of Injunction Bond, which was entered by Judge Gale in Case No. 82–10001 on March 6, 1985.

17. The settlement stipulation, was signed by both Phillip Schiff, the attorney for CITY GAS, and Sid Langer, President and Chairman of the Board of CITY GAS. It and the Stipulated Order were drafted by CITY GAS' attorney, Phillip Schiff.

18. In or about early 1982, Plaintiff made application to the Federal Energy Regulatory Commission (FERC) requesting its own allocation of natural gas so as to supply natural gas to residents of the subdivision.

19. In response to Plaintiff's application before the FERC, CITY GAS intervened in those proceedings and asserted its objection to the statements contained within Plaintiff's Application and to the granting of natural gas allocations to Plaintiff.

20. In the course of opposing CONSOLIDATED'S application to the FERC for an allocation of natural gas, CITY GAS made the representation:

> [CITY GAS] is attaching natural gas consumers in the area now served by [CONSOLIDATED] with LP gas, and anticipates that, in due course, it will convert a majority, if not all, of Plaintiff's LP gas customers to natural gas.

## VI. CONCLUSION

THIS COURT being fully advised in the matter, it is hereby ORDERED AND ADJUDGED that all Motions for Summary Judgment are hereby DENIED.

DONE AND ORDERED at Miami, Florida, this 4th day of October, 1985.